UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,

              Plaintiffs,

    - against -

MICHAEL D. GREEN, et al.,

             Defendants.
------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10 CV 2671 (SLT)

On June 11, 2010, plaintiffs Government Employees Insurance Co., GEICO Indemnity

Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or

"plaintiffs") filed this action seeking damages related to an alleged fraudulent scheme conducted

by defendants Dr. Michael D. Green ("Green"), Dr. Clifford Beinart ("Beinart"), Vista Medical

Diagnostic Imaging, P.C. ("Vista"), Total Global Medical, P.C. ("Total Global"), Rapuzzi,

Palumbo & Rosenberger, P.C. ("Rosenberger"), Patricia Rapuzzi ("Rapuzzi"), and Danny

Montanez ("Montanez"),[1] as well as defendants Asaf Yevdayev ("Yevdayev"), Imaging

Associates of Five Boroughs, LLC ("Imaging Associates"), and Five County Imaging Holdings,

LLC ("Five County") (collectively, the "Management Defendants").

The Management Defendants failed to respond, and on May 17, 2012, plaintiffs requested

a certificate of default against them. The Clerk of Court entered a notation of default against the

Management Defendants on June 7, 2012. On June 12, 2012, plaintiffs moved for default

---

[1]The claims against defendants Green, Beinart, Vista and Total Global were resolved as
of October 20, 2010; the claims against defendants Rosenberger and Rapuzzi were dismissed as
of October 31, 2011; and the claims against defendant Montanez were dismissed as of August
16, 2012.

judgment against the Management Defendants. On June 21, 2012, the Honorable Sandra L. Townes referred the motion for default judgment to the undersigned to conduct a damages inquest and prepare a report and recommendation. The Court Ordered the parties to submit any additional papers in support of their damage calculations by July 23, 2012, and an inquest hearing was held before the undersigned on August 7, 2012.

Since the Court has not received any submissions from the defendants, the Court has only considered plaintiffs' submissions and hereby respectfully recommends that plaintiffs be awarded damages in the amount of $1,393,762.97.

## FACTUAL BACKGROUND

In their Complaint, plaintiffs allege that the defendants in this case have been engaged in a scheme to defraud GEICO and the New York automobile insurance industry by having non-physicians "purchase" the licenses of physicians and then use the licenses to fraudulently incorporate professional corporations. (Compl.[2] ¶ 1(i), (ii)). These professional corporations then serve as vehicles through which fraudulent no-fault claims are submitted to GEICO for reimbursement for radiology services provided to people involved in automobile accidents in New York. (Id.) According to GEICO, only licensed physicians in New York are permitted to own, control, or derive economic benefits from a professional medical corporation. (Gershenoff Decl.[3] ¶ 24(i)). If a medical professional corporation is not lawfully incorporated and owned by

---

[2]Citations to "Compl." refer to plaintiffs' Complaint filed on June 11, 2010.

[3]Citations to "Gershenoff Decl." refer to the Declaration of Max Gershenoff, dated June 12, 2012.

physicians, or if the fees from such an entity are split with non-physicians, then the corporation is not eligible to bill or collect no-fault benefits. (Id. ¶ 24(ii)).

Plaintiffs allege that under the fraudulent scheme described in the Complaint, non-physicians create "management companies" to create the facade of business relationships with the professional corporations, but they actually use the management companies to own and operate the professional corporations. (Compl. ¶ 1(iii)). According to GEICO, the non-physicians partner with lawyers to create and submit bills to collect payment on the fraudulent no-fault claims and when the insurance companies deny coverage, the defendant lawyers bring suit to collect on the claims. (Id. ¶¶ 1(iv), (v)). GEICO seeks to recover the $420,565.80[4] that GEICO claims was stolen through these fraudulent claims. (Gershenoff Decl. ¶ 30).

In the instant case, plaintiffs allege that defendants Vista and Total Global are professional service corporations through which radiology services are performed and billed to insurance companies, including GEICO. (Id. ¶ 3(ii)). According to plaintiffs, Doctors Green and Beinart are physicians licensed to practice in New York, with Dr. Green serving as the nominal owner of Vista and Dr. Beinart serving as the nominal owner of Total Global. (Id. ¶ 3(i)). However, even though the professional corporations are listed as being owned by the physician defendants, GEICO alleges that they are actually owned and controlled by the Management Defendants, Yevdayev, Imaging Associates, and Five County. (Id. ¶ 3(iii)). GEICO alleges that

---

[4]In their Complaint, plaintiffs originally sought more than $625,000. (Compl. ¶ 2). At the inquest hearing, counsel for plaintiffs stated that this amount included payments made in relation to litigation and arbitration, whereas the lower amount stated in plaintiffs' motion for default judgment include only voluntary payments made to the defendants. GEICO also originally sought a declaration against defendants Vista and Total Global that it does not owe reimbursement of more than $1 million in fraudulent claims submitted by defendants. (Compl. ¶ 2). As discussed supra n. 1, plaintiffs' claims against Vista and Total Global have been resolved.

Yevdayev, who is not a licensed physician, paid the two doctors to fraudulently incorporate Vista and Total Global and then to cede ownership and control to the Management Defendants, in violation of New York law. (Gershenoff Decl. ¶ 24(iii)). Plaintiffs allege that Yevdayev then became listed as a signatory on the Vista and Total Global bank accounts by obtaining stamps of the physicians' signatures; Yevdayev then allegedly siphoned off the bulk of Vista's and Total Global's revenues in exchange for "sham 'management' services and leaseholds." (Id. ¶ 24(iv)).

Plaintiffs further claim that the Management Defendants used Vista and Total Global as conduits for submitting fraudulent no-fault bills to GEICO, among others. (Id. ¶ 24(v)). The billing contained a number of alleged misrepresentations, including: 1) that Vista and Total Global were properly licensed and eligible to receive no-fault benefits under Insurance Law § 5102(a)(1) and NYCRR § 65-3.16(a)(12), when in fact they were actually owned and controlled by non-medical professionals and were engaged in illegal fee-splitting with non-physicians; and 2) that they were eligible to receive no-fault benefits for the services allegedly performed when the services were not provided by Vista or Total Global employees. (Id. ¶ 24(v)).

The remaining defendants, Rosenberger, Rapuzzi, and Montanez, are all New York attorneys, whom GEICO claims have been the primary drivers of the scheme, responsible for submitting fraudulent bills to GEICO, prosecuting collection lawsuits against GEICO, and knowingly forging documents and creating fraudulent documents in connection with collections litigations, even though the lawyers know that Vista and Total Global are not eligible to bill for or collect no-fault benefits. (Compl. ¶ 3(iv)).

The Complaint alleges six causes of action against the Management Defendants – Yevdayev, Imaging Associates, and Five County – for substantive violations of the civil

4

Racketeer Influenced and Corrupt Organizations (RICO) statute (Second and Sixth Causes of Action), for conspiracy to violate RICO (Third and Seventh Causes of Action), for common law fraud (Fourth and Eighth Causes of Action), and for unjust enrichment (Fifth and Ninth Causes of Action). (Compl. ¶¶ 86-145; see also Gershenoff Decl. ¶ 3). Each of the Management Defendants was properly served with a copy of the Complaint (Gershenoff Decl. ¶¶ 4-6), and on March 30, 2011, the Management Defendants were given leave to file a motion to dismiss. (Id. ¶ 9). However, no motion to dismiss was ever filed and the Management Defendants never filed an answer to the Complaint. (Id. ¶ 10).

On October 4, 2011, during the initial conference before this Court, counsel for the Management Defendants indicated that he intended to move to withdraw as counsel. (Id. ¶ 11). On December 1, 2011, the Court granted counsel's request and gave the Management Defendants until January 27, 2012[5] to obtain and appear with new counsel. (Id. ¶ 13). The Management Defendants failed to obtain new counsel and failed to appear at the conference as ordered by the Court. (Id. ¶ 14).

On January 25, 2012, this Court set a discovery schedule, noting specifically in the Order that a failure to provide discovery could result in the answers being struck and default entered. (Id. ¶ 15). Although plaintiffs timely served discovery requests on Yevdayev and the other Management Defendants, the defendants failed to respond to the requests and failed to appear at the conference scheduled before this Court on April 10, 2012. (Id. ¶¶ 17, 18). On the same day, plaintiffs moved to compel the Management Defendants to respond to their discovery requests, and on April 23, 2012, this Court granted plaintiffs' motion and directed the Management

---

[5]The conference was subsequently moved to January 25, 2012. (Id. ¶ 13).

Defendants to provide complete answers to the requests by May 11, 2012, warning the defendants again that if they failed to respond, the Court would recommend that their Answers be struck and a default judgment enter against them. (Id. ¶¶ 18, 19).

Defendants failed to comply with the Court's Order to provide discovery; defendants also failed to move to dismiss the Complaint and failed to answer in a timely fashion. As a result, the Court recommended that a default enter. The Clerk of Court entered a default on June 7, 2012 against each of the Management Defendants, and on June 12, 2012, plaintiffs moved for default judgment.

## DISCUSSION

### I. Default Judgment

Plaintiffs claim that they have established entitlement to a default judgment against the Management Defendants based on either Federal Rule of Civil Procedure 55 or Rule 37. (Pls.' Mem.[6] at 2).

### A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default

---

[6]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendants Asaf Yevdayev, Imaging Associates of Five Boroughs, LLC and Five County Imaging Holdings, LLC, dated June 12, 2012.

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.

Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default

judgment. See Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has

cautioned that since a default judgment is an extreme remedy, it should only be entered as a last

resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not

processed expeditiously [and]. . . delay and clog its calendar," it has held that the district court

must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be

heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not

entitled to a default judgment as a matter of right simply because a party is in default. See Erwin

DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts

must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether

to grant a default judgment, including: (1) whether the grounds for default are clearly

established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant

on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05

CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not

violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 62 (2d Cir. 1981).

In this case, defendants never filed an answer to the Complaint and never moved to dismiss, despite their express intention to do so. Thus, they are clearly in default, and there is no reason not to consider plaintiffs' motion for default judgment.

B. Default Under Fed. R. Civ. P. 37

Plaintiffs further contend that because the Management Defendants failed to comply with the discovery orders of this Court, a default judgment should enter against each of them. (Pls.' Mem. at 7).

Rule 37 of the Federal Rules of Civil Procedure provides that: "[i]f a party or a party's officer, director, or managing agent. . .fails to obey an order to provide or permit discovery. . .the court where the action is pending may issue further just orders. . .includ[ing]. . .(vi) rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(vi). If a defendant fails to comply with a discovery order and that disobedience is found to be willful or in bad faith, then entry of a default judgment is appropriate. See Software Freedom Conservancy, Inc. v. Best Buy

8

Co., No. 09 CV 10155, 2010 WL 2985320, at *2 (S.D.N.Y. July 27, 2010) (citing

Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007)).

Courts in this circuit have held that a party's failure to comply with a discovery order is

willful when the court's order is clear, the party has understood the order, and the party's failure

to comply is not due to circumstances beyond the party's control. See, e.g., Jensen v. Allied

Burton Sec. Servs., No. 10 CV 2043, 2011 WL 4382347, at *3 (E.D.N.Y. May 27, 2011), report

and recommendation adopted, 2011 WL 4382459 (E.D.N.Y. Sep. 20, 2011); In re Fosamax

Products Liability Litigation, 07 CV 3652, 2010 WL 1779276, at *2 (S.D.N.Y. April 27, 2010).

The court in Trustees of Local 522 Welfare Fund of New York and New Jersey v. Flexwrap

Corp. found that, where the defendant exhibited a "pattern of noncompliance," and was given

"numerous opportunities to cure its violations," the defendant's noncompliance was willful and a

default judgment was granted in favor of plaintiffs. No. 09 CV 1417, 2010 WL 5057263

(E.D.N.Y. Nov. 5, 2010), report and recommendation adopted, 2010 WL 5067971 (E.D.N.Y.

Dec. 2, 2010); see also Software Freedom Conservancy, Inc. v. Best Buy Co., 2010 WL 2985320

(granting default judgment where defendant refused to comply with discovery obligations); MCI

Worldcom Communs., Inc. v. Gamma Communs. Grp., Inc., 204 F.R.D. 259 (S.D.N.Y. 2001)

(granting default judgment where defendants had repeatedly failed to comply with formal and

informal discovery requests and where defendants failed to respond to plaintiffs' motion for

sanctions).

In this case, the Management Defendants were served with their attorney's motion to

withdraw on October 17, 2011. According to Neil L. Fuhrer, Esq., the Management Defendants

requested that his office resign as counsel because of their inability to pay the legal fees being

incurred. (Fuhrer Decl.[7] at 2). On December 1, 2011, the Court granted the motion to withdraw and ordered the Management Defendants to appear with new counsel on January 27, 2012. Defendants not only failed to comply with the Court's clear Order to obtain counsel and appear at the next scheduled conference, but they have not participated in the case since their attorney withdrew.[8] They never moved to dismiss – as they originally claimed they intended to do – never filed an answer, and failed to comply with the Court's discovery schedule set on January 25, 2012. They failed to respond to plaintiffs' request for documents and interrogatories, even though plaintiffs' counsel served defendants at their last known addresses, and despite the Court's explicit warning that the "[f]ailure to provide discovery may result in the answers being struck and default entered." (Docket #66).

Defendants also failed to appear for the status conference set for April 10, 2012, and then failed to respond to plaintiffs' motion to compel responses to the discovery requests. The Court granted plaintiffs' motion to compel on April 23, 2012 and Ordered defendants to respond to the discovery by May 11, 2012. In that Order, the Court again warned that if the Management Defendants failed to respond, the Court would recommend that a default judgment enter. (Docket #73). Given that defendants failed to comply with the April 23, 2012 Order, have not

---

[7]Citations to "Fuhrer Decl." refer to the Declaration of Neil L. Fuhrer, submitted in connection with his motion to withdraw, dated October 17, 2011.

[8]The failure by the corporate defendants to obtain counsel in this case constitutes a failure to defend because the corporate defendants, as corporations, cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only).

10

provided any discovery, and have failed to contact the Court for over nine months, the Court

respectfully recommends that, pursuant to Rules 37 and 55 of the Federal Rules of Civil

Procedure, default enter against the Management Defendants for their willful failure to comply

with this Court's Orders to provide discovery and to participate in this litigation.


II. Plaintiffs' Claims

In considering the plaintiffs' motion for default judgment, the Court also considers

whether the Complaint states a claim against the Management Defendants.

A. Fraud

In alleging a claim of fraud, the plaintiffs must allege that there are facts demonstrating:

1) a material misrepresentation or omission of fact; 2) made with knowledge of its falsity; 3)

reliance by plaintiffs on the misrepresentations; 4) and damages caused by the

misrepresentations.  See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir.

1997); Allstate Ins. Co. v. Polack, No. 08 CV 0565, 2012 WL 4489282 (E.D.N.Y. Sept. 12,

2012), report and recommendation adopted, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012).

In this case, the plaintiffs allege that the Management Defendants misrepresented that

Vista and Total Global were eligible to receive no-fault benefits when they were owned and

operated by non-medical professionals, fraudulently incorporated, splitting fees with non-

professionals, and not actually providing services.  Similar allegations of misrepresentations have

been found to be sufficient to allege the first element of a claim of fraud under New York law.

See, e.g., Government Emps. Ins. Co. v. Damien, No. 10 CV 5409, 2011 WL 5976071 (E.D.N.Y.

Nov. 3, 2011), report and recommendation adopted, 2011 WL 6000571 (E.D.N.Y. Nov. 29,

2011) (granting default judgment on similar fraud claims involving no-fault billing where defendants misrepresented the corporate legitimacy of the professional corporations); State Farm Mut. Auto. Ins. v. Grafman, 655 F. Supp. 2d 212, 221-222 (E.D.N.Y. 2009) (finding plaintiff had sufficiently alleged common law fraud claims predicated on defendant's fraudulent incorporation and fee splitting and no-fault billing); Allstate Ins. Co. v. Ahmed Halima, No. 06 CV 1316, 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009); State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C., No. 04 CV 5045, 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008).

The Complaint also alleges facts sufficient to satisfy plaintiffs' burden to allege scienter on the part of the Management Defendants.  Under New York law, a plaintiff alleging common law fraud can establish an inference of scienter when facts are alleged showing that 1) defendants had both motive and opportunity to commit fraud; or 2) there was "strong circumstantial evidence of conscious misbehavior or recklessness." 380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009) (quoting Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)).

Here, plaintiffs allege that the Management Defendants acted with the requisite scienter in that Yevdayev allegedly caused the fraudulent incorporation of the two entities, fraudulently listed himself as a signatory on the Vista and Total Global bank accounts, and then submitted fraudulent billing to GEICO.  (Compl. ¶¶ 34-38, 44-48, 51).  Not only do these allegations demonstrate that the Management Defendants had both a motive and opportunity to commit the fraud, but plaintiffs have shown strong circumstantial evidence of conscious misbehavior or recklessness by the defendants. Government Emps. Ins. Co. v. Hollis Med. Care, P.C., 10 CV 4341, 2011 WL 5507426, n.11 (E.D.N.Y. Nov. 9, 2011) (finding allegations that defendants used

12

professional corporation to submit fraudulent claims sufficient to allege scienter); see also

Shields v. Citytrust Bancorp., 25 F.3d 1124, 1130 (2d Cir. 1994) (describing motive as

"entail[ing] concrete benefits that could be realized by one or more of the false statements and

wrongful nondisclosures alleged," and opportunity as "entail[ing] the means and likely prospect

of achieving concrete benefits by the means alleged").

The Complaint also adequately alleges the third and fourth elements of fraud in that

GEICO justifiably relied on the facially valid documents submitted or caused to be submitted by

Vista and Total Global in determining whether to pay claims, and suffered injury as a result

because it paid $420,565.80 with the belief that it was obligated to do so, when in fact it was not.

See Government Emps. Ins. Co. v. Damien, 2011 WL 5976071, at *4 (holding that insurer's

claim of reasonable reliance based on the statutory and contractual obligations to respond

promptly to facially valid claims for no-fault payments was sufficient to satisfy the reliance

element, and payments upon these fraudulent claims, when under no obligation to make such

payments, sufficiently stated the damage element for fraud); see also AIU Ins. Co. v. Olmecs

Med. Supply, Inc., 04 CV 2934, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) (holding that an

insurer's allegations that they relied on "facially valid" no-fault claims satisfies the reliance

element necessary to state a claim of fraud).

Accordingly, based on the allegations in the Complaint, the Court finds that plaintiffs

have adequately alleged the elements necessary to establish fraud under New York law.

B. Unjust Enrichment

In order to allege a claim for unjust enrichment, a plaintiff must allege that: 1) defendant

benefitted; 2) at plaintiff's expense; and 3) equity and good conscience requires that restitution

13

be granted to the plaintiff.  See, e.g., Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); see also Golden Pacific Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001).

Here, plaintiffs have alleged that the Management Defendants received payments of $420,565.80 to which they were not entitled, based on fraudulent billings submitted through entities not entitled to bill or collect for no-fault benefits.  These allegations are sufficient to allege a claim for unjust enrichment under New York law.  See Government Emps. Ins. Co. v. Damien, 2011 WL 5976071, at *5 (granting default judgment on similar claims of unjust enrichment stemming from a fraudulent no-fault billing scheme).  However, unjust enrichment is an equitable remedy, and "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter."  Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y. 2d 382, 388 (2d Circ. 1987).  Accordingly, the Court will not address damages under the unjust enrichment claim.

### C. RICO Claims

Finally, plaintiffs have adequately alleged claims under the RICO and RICO conspiracy statutes sufficient to entitle them to entry of a default judgment.

#### 1. Substantive RICO Claim

Under RICO, a plaintiff must allege: 1) the defendant, 2) through the commission of two or more predicate acts, 3) constituting a pattern of racketeering activity as defined in the statute, 4) directly or indirectly participated 5) in an enterprise, 6) the activities of which affected interstate commerce.  See Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1993) (citing 18 U.S.C. § 1962(a), (c)).  Under the RICO statute, "the acts of racketeering activity that constitute the pattern must be 'related, and [either] amount to or pose a threat of continuing criminal

14

activity.'" Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183-84 (2d Cir. 2008)

(quoting Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)).

The continuity requirement can be satisfied either by showing a "closed-ended" pattern – "a

series of related predicate acts extending over a substantial period of time," id. – or an "'open-

ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond

the period during which the predicate acts were performed." Id. (citing H.J. Inc. v. Nw. Bell Tel.

Co., 492 U.S. 229 (1989)).

      Here, GEICO has alleged that defendants Vista and Total Global constitute RICO

enterprises as defined by the statute.  GEICO further alleges that the Management Defendants

participated in the conduct of Vista and Total Global through a pattern of racketeering activity

consisting of numerous violations of the federal mail fraud statute, 18 U.S.C. § 1341, in that they

submitted fraudulent billing requests to GEICO through the mails.  (Compl. ¶¶ 88, 119).  See

State Farm Mut. Auto. Ins. v. Grafman, 655 F. Supp. 2d 212; Government Emps. Ins. Co. v.

Hollis Med. Care, P.C., 2011 WL 5507426, at *7-8.

      Plaintiffs have also sufficiently alleged that the Management Defendants participated in

the operation or management of the enterprise in that they implemented the fraudulent scheme to

submit fraudulent billing to GEICO.  See De Falco v. Bernas, 244 F.3d 286, 309 (2d Cir. 2001)

(holding that in the context of RICO, "participation" in the operation or management of the

enterprise requires that "one must have some part in directing those affairs").  Similarly, given

the massive number of fraudulent bills submitted, plaintiffs have alleged a "pattern of

racketeering activity" involving "at least two acts of racketeering activity" undertaken within a

10 year period.  See 18 U.S.C. § 1965(1); see also See De Falco v. Bernas, 244 F.3d at 306.

15

Plaintiffs have also adequately alleged both closed-ended and open-ended continuity. Plaintiffs have shown closed-ended continuity in that they have alleged that the Management Defendants submitted more than a thousand fraudulent bills on a continuous basis over more than a seven year period (Gershenoff Decl., Ex. B); see Spool v. World Child Int'l Adoption Agency, 520 F. 3d 178, 183 (2d Cir. 2008) (holding that a plaintiff must establish a series of related predicate acts extending over a substantial period of time in order to show closed-ended continuity); Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir. 1989) (requiring allegations from which it can be inferred that the racketeering acts were "neither isolated or sporadic"). Plaintiffs also allege open-ended continuity in that there was a threat of continued criminal activity in that the fraudulent no-fault claims could be considered the regular way in which Vista and Total Global operated and that the Management Defendants engaged in intricate planning to carry out and conceal their fraudulent conduct. See Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 369 (E.D.N.Y. 2012).

Based on the allegations in the Complaint, the Court finds that plaintiffs have sufficiently alleged each of the elements necessary to state a claim under RICO.

2. RICO Conspiracy Claim

In addition, plaintiffs have sufficiently alleged the elements necessary to state a claim of RICO conspiracy, which requires that there be proof that a defendant agreed to participate in the affairs of a RICO enterprise through a pattern of racketeering activity. See Salinas v. United States, 522 U.S. 52 (1997) (holding that the defendant need not be proven to have agreed that he would commit two or more predicate acts; it is sufficient if he knew of the general criminal object of the scheme and that he agreed to participate). Here, GEICO has alleged that the

16

Management Defendants agreed with the co-defendants to participate in this scheme and that they had knowledge of the roles of the others in committing the predicate acts.

Accordingly, plaintiffs have also established their claims for RICO conspiracy against the Management Defendants.

## III. Damages

### A. Legal Standard

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

17

B. Compensatory Damages

In seeking damages, GEICO seeks reimbursement of the amounts that GEICO paid to the Management Defendants in connection with the fraudulent claims that were submitted by Vista and Total Global. In connection with the motion for default judgment, GEICO submitted the Declaration of Jennifer Fogarty, Claims Manager for GEICO, who had the GEICO accounting department compile tax identification payment runs ("TIN Runs"), which set forth the amounts paid by GEICO based on the claims submitted by the Management Defendants. (Fogarty Decl. ¶ 4, Ex. 1). According to Ms. Fogarty, the TIN Runs gather information from GEICO's earnings reports to the Internal Revenue Service ("IRS"). (Id.) Thus, when GEICO authorizes a payment to a healthcare provider, the information is input into GEICO's computer systems and a check is then generated to the healthcare provider and catalogued based on the tax identification number of the payee. (Id.) From this information, GEICO generates IRS Form 1099-MISC for the payee and reports it to the IRS. (Id.)

Ms. Fogarty attached the TIN Runs for Vista and Total Global, identifying GEICO's payments totaling $420,565.80 for the claims at issue here. (Id. ¶¶ 5, 6, Ex. 1). Based on a review of the GEICO printout showing the payments made to Vista and Total Global, which have not been challenged or disputed by the Management Defendants, the Court respectfully recommends that plaintiffs be awarded $420,565.80 in compensatory damages.

C. Pre-Judgment Interest

GEICO also seeks an award of pre-judgment interest based on its fraud claims against the Management Defendants. Under New York law, an award of pre-judgment interest on damages awarded for fraud is mandatory. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,

18

801 F.2d 13, 28 (2d Cir. 1986); see also Barkley v. United Homes, LLC, 848 F. Supp. 2d 248,

269 (E.D.N.Y. 2012). Under New York State law, the method for calculating pre-judgment

interest is set forth in N.Y. CPLR § 5001, which provides that interest shall be calculated at the

non-compounded rate of 9% per annum, CPLR §§ 5001(a), 5004, and that "[i]nterest shall be

computed from the earliest ascertainable date the cause of action existed." Id.

Plaintiffs request an award of pre-judgment interest at 9% computed from the first day

following the year in which the payments were made on the fraudulent claims. (Pls.' Mem. at 24

(citing Government Emps. Ins. Co. v. Damien, 2011 WL 5976071)). Plaintiffs submitted their

proposed calculations of interest through June 30, 2012 in an exhibit to the Declaration of Mr.

Gershenoff.

Having reviewed plaintiffs' calculations, the Court finds that plaintiffs are owed interest

in the amount of $118,584.42 through June 30, 2012. Moreover, based on the Court's

calculations, plaintiffs are owed an additional $13,481.15 through the date of this Report and

Recommendation for a total of $132,065.57.[9]

D. Treble Damages

Plaintiffs seek treble damages for their RICO claims. (Pls.' Mem. at 23 (citing 18 U.S.C.

§ 1964)). The statute provides that: "Any person injured in his business or property by reason of

a violation of section 1962 of this chapter may sue therefor in any appropriate United States

district court and shall recover threefold the damages he sustains and the cost of the suit. . . ." 18

U.S.C. § 1964. Based on this provision of the RICO statute, plaintiffs seek an award of three

---

[9]Plaintiffs' pre-judgment interest calculation is based on the amount claimed as compensatory damages rather than on trebled damages under RICO. Accordingly, the Court's interest calculation is based on compensatory damages as well.

19

times the actual amounts paid on the fraudulent billing submitted by the Management

Defendants.  (Gershenoff Decl., Ex. D).  Courts in this circuit have awarded treble damages in

default judgment cases.  See, e.g., Government Emps. Ins. Co. v. Damien, 2011 WL 5976071;

D'Orange v. Feely, 894 F. Supp. 159 (S.D.N.Y. 1995) (awarding treble damages where a

defendant attorney had embezzled funds entrusted to him through power of attorney), aff'd, 101

F.3d 1393 (2d Cir. 1996), cert. denied, 522 U.S. 919 (1997).

   Having considered plaintiffs' motion and the undisputed facts demonstrating the

Management Defendants' knowing participation in this racketeering enterprise and the extent of

defendants' violations, the Court respectfully recommends that plaintiffs be awarded treble

damages in the amount of $1,261,697.40, which represents three times the amount recommended

as an award of compensatory damages.

   E.  Joint and Several Liability

   Finally, plaintiffs urge the Court to find the Management Defendants jointly and severally

liable for the damages, including the treble damages, assessed in this case.  (See Pls.' Mem. at 24

(citing County of Suffolk v. Amerada Hess Corp., 447 F. Supp. 289, 297 (S.D.N.Y. 2006); Ravo

v. Rogatnick, 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987)).

   "In a RICO conspiracy, defendants are jointly and severally liable for all of the plaintiff's

damages, even those with which an individual defendant was not personally involved."  Allstate

Ins. Co. v. Polack, No. 08 CV 0565, 2012 WL 4489282, at *6 (E.D.N.Y. Sept. 12, 2012), report

and recommendation adopted, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012) (quoting

Government Emps. Ins. Co. v. Infinity Health Products, Ltd., No. 10 CV 5611, 2012 WL

1427796, at *9 (E.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 2012 WL 1432213

20

(E.D.N.Y. Apr. 25, 2012)). Indeed, "[e]very circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations." United States v. Philip Morris USA, 316 F. Supp. 2d 19, 27 (D.D.C. 2004).

Accordingly, the Court respectfully recommends that the Management Defendants – Asaf Yevdayev, Imaging Associates of Five Boroughs, LLC, and Five County Imaging Holdings LLC – be held jointly and severally liable for the total damages awarded here, which amount to $1,393,762.97.

CONCLUSION

In summary, the Court respectfully recommends that a default judgment enter in favor of plaintiffs on their claims of fraud, unjust enrichment, RICO and RICO conspiracy against Asaf Yevdayev, Imaging Associates of Five Boroughs, LLC, and Five County Imaging Holdings LLC, and that these defendants be held jointly and severally liable to plaintiffs in the amount of $1,393,762.97, consisting of $1,261,697.40 in compensatory damages trebled under RICO and $132,065.57 in pre-judgment interest to the date of this Report and Recommendation.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

21

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
November 7, 2012

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

22